**UNITED STATES DISTRICT COURT**

**DISTRICT OF SOUTH CAROLINA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Judy Baumann, individually and as Personal Representative of the Estate of Quinton Lynn Stacey, Jr., | ) | C/A No: |
| Plaintiff, | ) | <u>COMPLAINT</u><br>(42 U.S.C. § 1983)<br>(Jury Trial Demanded) |
| vs. | ) | |
| Warden Joseph McFadden, Associate Warden Blackwell, Associate Warden Thompson, Major Thierry Nettles, Captain Patricia Brown, Captain Darryl McGhee, Captain Karl Von Mutius, Lt. Bruce Easterlin, Lt. Leslie Davis, Lt. Deloris King, Lt. Angela Gordon, Lt. Reginald Cooper, Sgt. Michael Wentz, L. Steggs, Sgt. Donald Harper, Cpl. Allen Rodgers, Matthew Capshaw, Earnest Jackson, Gerome Frasier, Sandy Williams, Anthony Lizzano, Jacob Miller, Tyrone Heyward, Reginald Gadson, Jeffrey Alewine, Donald Fuller, Damion Gaskin, Nicholas Matthews, Kendyl Farquharson, Samuel Johnson, Kenneth Brigante, Timothy Gilmore, and Tyisha Dennis, | ) | |
| Defendants. | ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## <u>JURISDICTION</u>

1. This action is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States

Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3. The Plaintiff, Judy Baumann, is a citizen and resident of the County of Georgetown, State of South Carolina. As the natural mother of the decedent, she is the properly appointed Personal Representative of the Estate of Quinton Lynn Stacey, Jr. by Order of the Georgetown County Probate Court dated October 5, 2017 under case number 2017-ES-22-00402.

4. This suit is filed on behalf of the heirs of Quinton Lynn Stacey.

5. At all times mentioned in the Complaint, the Defendants Warden Joseph McFadden, Associate Warden Blackwell, Associate Warden Thompson, Major Thierry Nettles, Captain Patricia Brown, Captain Darryl McGhee, Captain Karl Von Mutius, Lt. Bruce Easterlin, Lt. Leslie Davis, Lt. Deloris King, Lt. Angela Gordon, Lt. Reginald Cooper, Sgt. Michael Wentz, L. Steggs, Sgt. Donald Harper, and Cpl. Allan Rodgers were supervisors, administrators, and/or employees of the South Carolina Department of Corrections who supervised others at the Lieber Correctional Institution. At all relevant times hereinafter mentioned these Defendants were acting individually as employees and/or administrators of the Lieber Correctional Institution. For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity, under the color of state law. Upon information and belief, these Defendants

either had direct contact with the decedent, had direct knowledge of his medical condition (including his need for medical care), or supervised others who had direct contact with him.

During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not limited to, the decedent's right to appropriate medical care and due process. Additionally, these Defendants had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

6. Upon information and belief (during the time period set out below) Defendants Matthew Capshaw, Earnest Jackson, Gerome Frasier, Sandy Williams, Anthony Lizzano, Jacob Miller, Tyrone Heyward, Reginald Gadson, Jeffrey Alewine, Donald Fuller, Damion Gaskin, Nicholas Matthews, Kendyl Farquharson, Samuel Johnson, Kenneth Brigante, Timothy Gilmore, and Tyisha Dennis, were Correctional Officers who had direct contact with the decedent and became aware of his serious medical condition. Prior to his death, these Defendants had the obligation and the opportunity to secure the appropriate medical care and treatment, refrain from utilizing physical cruelty and to afford the decedent due process. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to secure the appropriate medical care. A more detailed description of the Defendants' actions are set out below. During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not

limited to, the decedent's right to appropriate medical care. For purposes of claims asserted under 42 U.S.C §1983, these Defendants are being sued in their individual capacity under the color of state law.

7. The allegations set forth in this Complaint occurred in Dorchester County; therefore, venue is proper in this District.

## FACTS

8. The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants while incarcerated at the Lieber Correctional Institution.

9. Prison officials have a federal constitutional duty (under the 8th Amendment) to protect inmates from probable foreseeable harm. In this case the Plaintiff is informed and believes that (a) prison officials knew that the decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants failed to take reasonable measures to abate the risk; and (c) the decedent suffered serious injuries and death as a direct result thereof.

10. Quinton Lynn Stacey, Jr. (hereinafter "decedent") was booked into SCDC by and through Kirkland R&E on or about June 3, 2015 for intake screening and classification. During the intake process it was determined by the correctional and medical staff that the decedent suffered from a past medical history including hypertension, asthma, migraines, GERD, glaucoma and mental illness. Initially he was not prescribed any medications. The Medication Administration Record indicates that an anti-seizure medication was administered beginning in late June of that year.

11. On or about August 5, 2015, the decedent was transferred to the Lieber Correctional Institution. The decedent remained at LCI unit until his death on June 14, 2016.

12. The Plaintiff is informed and believes that prior to the events in question, LCI (as a level (3) three Correctional Institute) had a long history of overcrowding and consciously failing to provide adequate security and supervision over the inmates located at the facility – to include those inmates located within the Ashley Unit. This was well known to the Defendants – especially, Warden Joseph McFadden, Associate Warden Blackwell, Associate Warden Thompson, Major Thierry Nettles, Captain Patricia Brown, Captain Darryl McGhee, Captain Karl Von Mutius, Lt. Bruce Easterlin, Lt. Leslie Davis, Lt. Deloris King, Lt. Angela Gordon, Lt. Reginald Cooper, Sgt. Michael Wentz, L. Steggs, Sgt. Donald Harper, and Cpl. Allan Rodgers. Prior to the events in question, these Defendants knew that these factors would likely result in unsafe living conditions for all inmates, including the decedent.

13. Specifically, the Warden and above-named administrators (listed in paragraph 12) at Lieber Correctional Institution had entered into a pattern and practice of failing to provide the adequate and/or specific number of properly trained security guards at numerous locations throughout the facility. Further, the administrators, employees and correctional staff of Lieber Correctional Institution knew or should have known that their conscious failure to provide adequate security measures would result in unsafe conditions for the inmate population – to include and not be limited to contraband and failing to recognize an inmate (such as the decedent) with a serious medical condition requiring emergent medical care.

14. Prior to the events in question, each of the individual Defendants had received training to recognize when an inmate had a serious medical condition which required emergent medical care. Additionally, these Defendants had received training that required them to ensure that the inmate needing such medical care received it in an emergent fashion. In this case, the Defendants consciously failed to take the actions they were trained to provide. Further, even

without training, the individual Defendants (who had contact with the decedent) should have easily been able to recognize that he had a serious medical condition which required emergent medical care.

15. Prior to and during the time period in question, the individual correctional officers (included in this Complaint) assigned to the decedent's unit/wing were required to perform individual cell checks (checking on each and every inmate in the wing) at least once every thirty (30) minutes. During these contacts the individual Defendants should easily have been able to recognize that the decedent's overall physical and mental condition had drastically deteriorated and that he required emergent medical care.

16. Additionally, the Plaintiff is informed and believes that the individual correctional officers (included in this Complaint) were required to pass out medications to the inmates – including the decedent. Therefore, prior to the events in question, these individuals had specific knowledge that the decedent had numerous medical conditions requiring prescription medication.

17. From August of 2015 to February of 2016, the decedent was suffering from migraine type headaches, dizziness, seizures, and problems with his eyes. Based on the correctional officers' duty to pass out medications to the inmates located in the units/wings where they worked, the individual Defendants working in the decedent's unit had specific knowledge that the decedent was receiving and taking prescription medication for numerous physical ailments.

18. The Plaintiff is informed and believes that on or about February 10, 2016 and February 12, 2016 the decedent suffered from seizures that necessitated that he be sent out to Trident Regional Medical Center for evaluation. Upon return from the ER, the decedent was

placed on prescription medication that he received twice daily. The Plaintiff is informed and believes that this was well known to the above-named Defendants.

19. Following his return from the hospital on or about February 13, 2016, the Plaintiff is informed and believes that the decedent requested medical care on numerous occasions for continued problems (to include headaches, dizziness, nausea and lazy eye). Further, these problems were well known to all of the individual Defendants.

20. Specifically, on or about May 5, 2016 the Defendants Capshaw and Steggs were supposed to ensure that the decedent was sent to medical due to his change in demeanor. However, there is no documentation that the decedent was even evaluated by a physician and/or mental health. In fact, there is no documentation that the decedent was ever seen and/or examined by a physician from February up until his death. The conscious failure of the individual Defendants (to include Capshaw, Steggs and Nettles) to ensure the decedent (who had an obvious, serious medical condition) was seen and evaluated by competent medical personnel during this time period is an example of conscious and deliberate indifference.

21. For the next several weeks there is little documentation regarding the decedent by correctional staff. The decedent's rapidly deteriorating condition should have been obvious to all Defendants at this time; however, no action was taken to provide the decedent with emergent medical care. Specifically, the Plaintiff is informed and believes that the Defendants Matthew Capshaw, Earnest Jackson, Gerome Frasier, Sandy Williams, Anthony Lizzano, Jacob Miller, Tyrone Heyward, Reginald Gadson, Jeffrey Alewine, Donald Fuller, Damion Gaskin, Nicholas Matthews, Kendyl Farquharson, Samuel Johnson, Kenneth Brigante, Timothy Gilmore, and Tyisha Dennis were the individual correctional officers assigned to the decedent's unit/wing from approximately May 5, 2016 through June 14, 2016. These Defendants had the duty and

obligation to check on the decedent at least once every thirty (30) minutes during their shifts. During these Defendants' numerous contacts with the decedent they would have easily been able to recognize that his overall physical condition was deteriorating and that he required immediate medical care. Their continued failure to ensure that the decedent received appropriate medical care during the time period in question is another example of their conscious and deliberate indifference to the decedent's medical needs.

22. Specifically, during the last fourteen (14) days the decedent was alive, he was being housed in the Ashley Dorm, A-Wing of LCI. The Plaintiff is informed and believes that during this time period no correctional officer was assigned to this wing on June 3rd, 4th, 5th, 8th, 9th, and 10th, 2016. This failure was known to the administrative staff (to include Defendants Warden Joseph McFadden, Associate Warden Blackwell, Associate Warden Thompson, Major Thierry Nettles, Captain Patricia Brown, Captain Darryl McGhee, Captain Karl Von Mutius, Lt. Bruce Easterlin, Lt. Leslie Davis, Lt. Deloris King, Lt. Angela Gordon, Lt. Reginald Cooper, Sgt. Michael Wentz, L. Steggs, Sgt. Donald Harper, and Cpl. Allan Rodgers). The Plaintiff is further informed and believes that Defendants Gaskin and Frasier were working the decedent's wing on June 1, 2016; Gaskin and Heyward were working on June 2, 2016; Capshaw and Frasier on June 6, 2016; Capshaw and Frasier on June 7, 2016; Capshaw and Frasier on June 11, 2016; Miller on June 12, 2016; Lizzano on June 13, 2016; and Dennis on June 14, 2016. Again, the numerous contacts that these individual Defendants would have had with the decedent during this time would have easily shown the decedent's overall physical deterioration and need for immediate life-saving medical care. Their continued failure to provide this medical care during the time period in question is another example of their conscious and deliberate indifference to the decedent's medical needs.

23. The Plaintiff is informed and believes that during the above-mentioned dates during which no correctional officer was assigned to the A-Wing of the Ashley Dorm, the correctional officer assigned to the B-Wing of the Ashley Dorm would have been responsible for all inmates housed within the Ashley Dorm – to include the decedent. Specifically, the Plaintiff is informed and believes that Defendants Wentz and Farquharson were assigned to the entire unit on June 3, 2016; Rodgers and Williams on June 4, 2016; Rodgers and Johnson on June 5, 2016; Wentz and Brigante on June 8, 2016; Alewine and Gadson on June 9, 2016; Miller and Heyward on June 10, 2016; Heyward on June 12, 2016; and Gadson on June 13, 2016. Again, the numerous contacts that these individual Defendants would have had with the decedent during this time would have easily shown the decedent's overall physical deterioration and need for immediate medical care. Their continued failure to provide life-saving medical care during the time period in question is another example of their conscious and deliberate indifference to the decedent's medical needs.

24. On or about June 14, 2016 at approximately 10:40am, the decedent was found unresponsive in his cell by Defendant Dennis. Lieber First responders were called (to include Defendants Gordon, Von Mutius, McFadden, Blackwell and Thompson) and CPR was initiated. The decedent is noted to be cold to the touch and gray/dusky purple in color. His pupils are noted to be fixed and dilated and no pulse or respirations are found. The decedent was pronounced death at 10:50am by a SCDC nurse practitioner; however, according to the Dorchester County Coroner, the decedent died at 8:30am. The Plaintiff is informed and believes that the last person to see the decedent alive was Defendant Dennis at approximately 7:45am.

25. An autopsy was held on June 15, 2016 gives a final necropsy diagnosis of cardiomegaly and seizure.

26. All Defendants (including all supervisory staff) had more than sufficient knowledge of the decedent's condition and they all acted in blatant disregard of the health and life. These Defendants had direct contact with the decedent (during the time period in question) or supervised those who had direct contact with him. Further, these Defendants had the opportunity and obligation to secure the appropriate medical treatment and care for the decedent. These Defendants were deliberately indifferent to the emergent medical needs of the decedent by consciously failing to recognize and secure the appropriate medical care and/or treatment which would have included proper assessment, evaluation and medications. Based directly on their actions or inactions, the decedent suffered needlessly (both physically and mentally) and died on June 14, 2016.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

27. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

28. The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as correctional officers and/or supervisors of the Lieber Correctional Institution and had certain duties imposed upon them with regard to Quinton Stacey. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to proper medical care and to be free from cruel and unusual punishment.

29. The Defendants were consciously and deliberately indifferent to the decedent and the Plaintiff on or around May 5, 2016 through June 14, 2016 in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in entering into a pattern and practice of failing to provide appropriate medical care;

(d) in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(f) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(k) in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(l) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(m) in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(n) if said procedures do exist, in consciously failing to follow same;

(o) in abandoning the decedent when he was in desperate need for medical care;

30. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the decedent suffered needlessly and ultimately died.

31. As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotions distress, incurred

funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

32. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

33. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as correctional officers and/or supervisors of the Lieber Correctional Institution and had certain duties imposed upon them with regard to Quinton Stacey. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to medical care and to be free from cruel and unusual punishment.

34. The Defendants were consciously and deliberately indifferent to the decedent and Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(d) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(e) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(f) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(g) in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(h) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(i) in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(j) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(k) in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(l) if said procedures do exist, in consciously failing to follow same;

(m) in abandoning the decedent when he was in desperate need for medical care;

35. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

36. The Defendants jointly, severally and in combination thereof, wrongfully caused the death of Quinton Stacey by their acts and omissions as described above.

37. As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a) loss of financial economic support and contribution of the deceased;

(b) extreme mental shock and suffering;

(c) extreme wounded feelings;

(d) tremendous grief and sorrow;

(e) loss of friendship and companionship; and

(f) deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

38. The Plaintiff is informed and believes that the Estate of Quinton Lynn Stacey is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

39. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(SURVIVAL)**

40. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

41. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Lieber Correctional Institution and had certain duties imposed upon them with regard to Quinton Stacey. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

42. The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in punishing the decedent without the opportunity of due process;

(d) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(e) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(f) in knowingly, deliberately and consciously denying the decedent's right to due process prior to administering punishment in the way of cruel and unusual punishment;

(g) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i) in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(k) in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(l) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(m) in entering into a pattern and practice of failing to provide due process to its detainee population, including the decedent;

(n) in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(o) if said procedures do exist, in consciously failing to follow same;

(p) in abandoning the decedent when he was in desperate need for medical care;

43. As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

44. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the decedent, loss of support, mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**

**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(WRONGFUL DEATH)**

45. Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

46. The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Lieber Correctional Institution and had certain duties imposed upon them with regard to Quinton Stacey. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

47. The Defendants' actions were consciously and deliberately indifferent to the decedent and the Plaintiff during the time period mentioned in the facts in the following particulars:

(a) in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b) in consciously failing to use even slight care and caution in safekeeping the decedent;

(c) in consciously failing to sufficiently screen, classify and/or monitor the decedent while he was incarcerated so as to determine the severity of his condition and his emergent need for medical care;

(d) in knowingly, deliberately and consciously denying appropriate medical care to the decedent;

(e) in knowingly, deliberately and consciously denying the decedent's right to due process prior to administering punishment in the way of cruel and unusual punishment;

(f) in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(g) in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(h) in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(i) in consciously failing to refer or transport the decedent, to a specialist and/or a hospital;

(j) in consciously failing to have the proper medical examination performed to determine the decedent's medical needs and/or mental status and provide appropriate medical care and treatment;

(k) in consciously failing to take the appropriate steps to or provide medical care and treatment to the decedent when they had actual and constructive notice of the decedent's medical condition;

(l) in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care;

(m) if said procedures do exist, in consciously failing to follow same;

(n) in abandoning the decedent when he was in desperate need for medical care;

48. As a direct and proximate result of the Defendants' acts of willful, malicious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

49. The Defendants, jointly, severally and in combination thereof, wrongfully caused the death of Quinton Stacey by their acts and omissions as described above.

50. As a direct and proximate result of the omissions, willful and wanton conduct of the Defendants, the Plaintiff has been damaged and suffered as follows:

(a) loss of financial economic support and contribution of the deceased;

(b) extreme mental shock and suffering;

(c) extreme wounded feelings;

(d) tremendous grief and sorrow;

(e) loss of friendship and companionship; and

(f) deprivation of the use and comfort of the deceased's society, knowledge and judgment and experience.

51. The Plaintiff is informed and believes that the Estate of Quinton Lynn Stacey is entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants, pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

52. As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions

now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

*s/ C. Carter Elliott, Jr.*

C. Carter Elliott, Jr.
U.S.D.C. Bar #: 5423
Elliott & Phelan, LLC
17 ½ Screven Street
P.O. Box 1405
Georgetown, SC 29442
(843) 546-0650 (phone)
(843) 546-1920 (fax)
carter@elliottphelanlaw.com

April 30, 2019
Georgetown, South Carolina